# TRAVELLERS' INSURANCE COMPANY *v.* EDWARDS.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF NEW YORK.

Argued May 6, 9, 1887. — Decided May 27, 1887.

P., as agent for an insurance company in Hartford, Connecticut, received at Southbridge, in Massachusetts, the application of E. for an insurance upon his life, and the premium therefor (paid May 24, 1882); transmitted both to the company; received from the company a policy; and delivered the latter to E. The policy contained a provision that in case of death of the assured, his representatives should "give immediate notice in writing to the company, stating the time, place, and cause of death," and should "within seven months thereafter, by direct and reliable evidence, furnish the company with proofs of the same, giving full particulars." E. died June 19, 1882. P. was verbally informed of it on the same day, and a day or two afterwards informed the family that he was going to Hartford, and would notify the company of the death, and would procure the necessary blanks for proof. He went there, gave the notice to the company, with all the information in his possession, obtained the blanks, and gave them to a representative of the administratrix, telling him to return them to him (P.) when completed. The blanks were filled in and were returned to P. on the 3d of July, 1882. When more than seven months had expired after the death, P., who had not forwarded the papers to Hartford, returned them to the administratrix, saying that they were incomplete, and asking for fuller information. The papers were then completed in accordance with P.'s directions, were returned to him January 29, 1883, and were by him transmitted to the company February 7, 1883, and received by it without objection.

*Held,* That without deciding whether the verbal notice to P. was a sufficient compliance with the terms of the contract in that respect, or whether it would have been sufficient to deliver the proofs of death to P., if there were no more than that in the case, the action of the company, upon P.'s communicating the death of E., and its delivering to him of blank affidavits and forms to be filled up, together with the subsequent correspondence, show that P. was regarded throughout by the company as its agent; and the company is therefore bound by what he did.

THIS was a writ of error to the Circuit Court of the United States for the Northern District of New York.

The defendant in error, Catherine L. Edwards, obtained a

judgment in the Circuit Court for the sum of $5387.50 against the Travellers' Insurance Company of Hartford, Connecticut, on a policy of insurance upon the life of her brother, Frank Edwards. The suit was originally instituted in the Supreme Court for Ontario County, New York, from whence it was removed by the plaintiff in error into the Circuit Court of the United States for that District.

The record of a long trial before a jury was presented to the court in a stenographic report of the proceedings there, which had been adopted by the parties and by the judge trying the case as a bill of exceptions. It was obvious from this paper that the main controversy before the jury was upon a question of suicide set up by the defendant company, but the brief of the plaintiff in error and his assignment of errors eliminated all this and relied upon the defence stated by the brief in the following language:

"Trial was had before a jury, and a verdict was rendered for the plaintiff, and the questions now arising are whether the plaintiff below complied with those conditions of the policy which required written notice to the company of the death of the deceased, and proofs of the same within seven months thereafter; whether the action was prematurely brought by reason of the plaintiff's failure to comply with such conditions of the policy before bringing suit; and whether certain details of evidence bearing upon the foregoing questions were properly admitted against the objection of the company."

The assignments of error corresponded with this statement, and were given verbatim, as follows:.

"The Circuit Court erred—

"1. In that it admitted testimony relating to the acts and statements of Mr. E. M. Phillips, the local agent of the insurance company at Southbridge, Mass., with reference to the notice of death to be given by the defendant in error to the insurance company and the delivery and reception of the proofs of death, as binding the company and affecting the rights and duties of the parties to the contract of insurance, it not appearing that Phillips had authority to represent or bind the company in this regard. (Record, pp. 22, 23, 28, 29, 58, 77.)

" 2. In that the court charged the jury as follows: 'If upon this evidence you find that upon the 3d of July, or during the seven months limited by the contract, the proofs of death which have been referred to were served upon Mr. Phillips, who was held out by this company to be its agent, under the circumstances detailed in this case — that is, if you believe that he stated to the representatives of this assured that the proofs were to be left with him, and served upon him and not upon the company — then, I say, for the purposes of this case, that that was sufficient service upon the company, within the provisions of the contract.' (Charge, p. 79.)

" 3. In that it refused to rule that the defendant in error had not furnished evidence of the notice of death required by the policy, inasmuch as there was no evidence that any notice in writing was given to the company after the death of Edwards, or that proofs of death were furnished to or served upon the company, and within seven months of his death, as required by the policy. (pp. 29, 77, 78.)

" 4. In that the court declined to charge the jury as follows: 'That, under the undisputed evidence in this case, the jury must find a verdict for the defendant under the facts alleged in the second separate answer.' (p. 82; Second separate answer, p. 3.)

" 5. In that it refused to rule that the suit was prematurely brought, because the plaintiff below had not at the time furnished due notice and proofs of death, as required by the policy, and ninety days thereafter had not elapsed. (p. 78.) "

The language of the policy upon this point was as follows:

" That in the event of the death of the person insured, then the party assured, or his or her legal representatives, shall give immediate notice in writing to the company at Hartford, Conn., stating the time, place, and cause of death, and shall within seven months thereafter, by direct and reliable evidence, furnish the company with proofs of the same, giving full particulars, without fraud or concealment of any kind."

The answer of the defendant alleged that the plaintiff did not give to the defendant, at Hartford, or elsewhere, immediate notice in writing of the death of the said insured, and

that defendant did not receive from said plaintiff notice of the death of the said Frank Edwards until the 10th day of February, 1883, his death occurring on June 19, 1882, and that the plaintiff did not, within seven months after the last mentioned date, give notice in writing to the defendant, at Hartford, or elsewhere, nor in the manner and form as required by the policy, and has not delivered to or furnished the defendant with proofs of the death of said Frank Edwards, with full particulars, but, on the contrary, failed and neglected so to do.

The evidence on this subject showed substantially that Phillips was the agent at Southbridge, Massachusetts, of the defendant corporation; that the application on which the policy issued was forwarded by Phillips to Hartford, the policy returned to him, and by him delivered to Edwards; that the receipt for the premium, signed by Rodney Dennis, secretary of the company, declared in the body of it that the policy would not be valid " until the above stated premium has been received during the lifetime of said Frank Edwards, and this receipt countersigned by E. M. Phillips, agent of this company at Southbridge, Mass." On the margin of the receipt was the statement that " the agent who receives the within premium should countersign this receipt, and invariably state over his signature the date at which the payment is made to him." Across its face was written: " The within premium received and this receipt countersigned by me this 24th day of May, 1882. E. M. Phillips, agent at Southbridge, Mass." It was further indorsed: " All policies and agreements made by this company are signed by its president or secretary. No other person can alter or waive any of the conditions of the policies or issue permits of any kind, or make agreements binding upon said company. Rodney Dennis, secretary."

The evidence further showed that on the day after the death of Edwards. a gentleman named Bartholomew, who was a friend, and probably the attorney, of the family, met Mr. Phillips in the street; that Phillips said to him in regard to Edwards, whose death was then just known, that he was insured in the Travellers' Life Insurance Company, and that he (Phillips) was going to Hartford. The witness, Bartholo-

mew, testifies: "I asked him if that was so. I didn't at that time know that he had a policy in that company. He said he was going to Hartford, and would give to the company the notice of his death, and would procure the blanks for the proofs of loss. I asked him if it would do as well for him to give the notice to the company in that way as for any party interested. He said it would, and I think that was all that was said then; saw Mr. Phillips some days after that; met him somewhere in the street — can't tell where — and he told me he had been to Hartford and had procured the blanks, and that if I would come to his office he would deliver them to me."

The other evidence in the case, including that of Mr. Dennis, the secretary of the company, left no doubt of the fact that Mr. Phillips informed him of the death of Edwards, and of all that was known about it at that time, though very little was known in Southbridge, as he died in Boston. Mr. Dennis gave Phillips the blanks for the regular proofs of death, which the company always required, which blanks contained instructions as to how these proofs should be made out, and what should be contained in the affidavits directed by the company to be made.

Mr. Phillips delivered these papers to Bartholomew within a day or two after his visit to Hartford, and said to him, "When you get them completed I want you to return them to me." This Bartholomew swears to positively, and Phillips, while he does not recall the direction to return them to him, says that he is not willing to swear to the contrary.

These affidavits were made out and delivered to Phillips on the third day of July. Through some neglect on his part they remained in his office beyond the period of seven months which the policy fixed as the time within which they should have been delivered at the Hartford office. His attention having been brought to these papers in some manner, not particularly described, he called upon Bartholomew with them and stated that they were not sufficient in regard to the particulars of the death of Edwards. They were afterwards returned to Phillips, who forwarded them to the company about the 7th day of February, 1883, which the company insisted here was too late.

The whole of the testimony upon this narrow issue turned upon the question whether the absence of a written notice of. the death of the insured, when the company had full notice of it through Phillips, their agent, and whether the delivery of the proofs of death to the company after the expiration of the seven months, although they had been delivered to the agent Phillips within the time required, should defeat a recovery.

. The opinion of the judge who tried the case, on a motion for a new trial, stated the facts as he understood them, and, as this court thought, with accuracy, together with his view of the law of the subject, so well that they are transcribed here:

"The facts are as follows: The insured died June 19, 1882. A day or two afterwards E. M. Phillips, who is described in the receipt referred to as 'agent of this company at South-bridge, Mass.,' met one of the family of the deceased on the street, informed him that he was going to Hartford and would give the company the requisite notice, and would procure the necessary blanks for the proofs of death. He did go to Hartford on or about the 21st of June, saw the secretary of the company, gave him notice of the death, stating all the particulars which he then knew, and obtained the blank proofs. On his return he handed the blanks to one of the plaintiff's representatives, saying at the time, 'When you get them completed I want you to return them to me.' They were filled out and delivered to him July 3, 1882. He retained them for several months, and then returned them to a brother of the plaintiff, saying that they were incomplete, and demanded additional information. On the 29th of January, 1883, they were again delivered to Phillips, and by him sent to the company on or about the 7th of February. The company, in acknowledging their receipt, made no objection that they were received too late, and retained them in its possession. They were produced on the trial by the defendant's counsel.

"It must be held that, if the plaintiff has not followed the contract literally in these particulars, it was because she was misled by the course of the defendant, and that the defendant is not now in a position to take advantage of the plaintiff's omission, having waived a strict performance of the contract."

See *Edwards* v. *Travellers' Insurance Co.*, 22 Blatchford, .225.

*Mr. Solomon Lincoln* for plaintiff in error.

The evidence fails to show that the defendant in error complied with the conditions of the policy in respect to notice, because: *First.* It does not appear that written notice of the death was given to the company. It was not even given to Phillips. *Second.* As matter of law, it fails to show that Phillips had authority to receive notices in behalf of the company. Such authority must be proved affirmatively, and there is no evidence that it existed.

In the first place, there is no direct evidence of it. Phillips' duties, as testified to by himself and by his superior, Dr. Lewis, do not confer or imply it. They are strictly defined and limited, and do not include the authority claimed. His own declarations, as such, are not competent to prove it; and there is no evidence that any declarations or acts of his in excess of his authority, as strictly defined by himself and by the company, were ever ratified by the company, or even brought to its knowledge. The indorsement placed upon the proofs of death at Hartford is purely clerical, and even if assumed to be placed there by direction of the company has no legal significance. It was not communicated to the assured, and was a mere private memorandum. Nothing can be inferred from it prejudicial to the company.

Nor can the required authority be inferred from the general scope of employment of Mr. Phillips. There is a complete failure of evidence in this regard. It does not appear that he had any general duties or discharged any other than those limited ones heretofore considered.

Therefore, the only deduction possible from all this testimony, as matter of law, is that Phillips was not a general but a special agent of the company, with duties and authority strictly limited to one branch of its business, viz., the life department, and, in that, to receiving applications for insurance, forwarding such to the company, delivering the policy,

if written, and collecting the premium. He had no authority to represent it in any other regard, and consequently he had no authority to accept notices for the company. This power the company had chosen to reserve to itself.

. Therefore, it is submitted that the court erred when it ruled that service of notice upon Phillips and delivery of proofs to him was service upon and delivery to the company, and admitted evidence of such service and delivery, and especially erred in using the following language in the charge to the jury: "If you believe that he (Phillips) stated to the representatives of this assured that the proofs were to be left with him, and served upon him, and not upon the company, then I say for the purposes of this case, that that was sufficient service upon the company within the provisions of the contract." This language appears to involve the proposition that agency can be established simply by the declarations of the agent. It was certainly likely to mislead the jury, and to lead them to believe that they could find that Phillips had authority to receive notice for the company simply from his own assertions.

It follows, also, if the contention of the plaintiff in error is sound, that the court should have ruled that the defendant in error had not furnished evidence of the notice of death required by the policy, inasmuch as no notice in writing was given to the company after the death of Edwards, and no proofs of death were furnished to or served upon the company within seven months of his death as required by the policy; that the court should have ordered a verdict for the defendant under the facts alleged in the second separate answer; and, also, presenting the same conclusion in another aspect, should have ruled that the action was prematurely brought, inasmuch as it was not brought ninety days after due notice and proof as required by the policy.

Although the rulings of the court below relate to the effect of notice to Phillips as affecting the company, and this brief has consequently discussed the case in that aspect, it may be proper to call attention to the fact that there is no claim that written notice of death was delivered to the company itself at

Hartford, as distinct from Phillips, nor were proofs of loss furnished to the company itself, as distinct from Phillips, within seven months of the death of the assured. The defendant in error must therefore rely and rest upon the notices given to Phillips as being notices given to the company.

The error heretofore considered, strictly stated, is the error in ruling that Phillips so represented the company that notice to him was notice to the company. Waiver of the conditions of the policy relating to notice and proofs of death is not pleaded by the defendant in error and was not made an issue at the trial, and, it is submitted, is not now open to discussion, but, lest it may be claimed to be implicitly involved in the rulings discussed, it seems proper to observe that there is no evidence of waiver of these conditions by the company. These conditions could not be waived for the company by Phillips. He was expressly limited in this respect by the premium receipt and by the policy, and this limitation was thus brought to the notice of the assured. The company itself did not waive these conditions. It was simply silent, except that after the assured had failed to furnish proofs of death within seven months, it asked for the analysis of the stomach of the deceased. It did no act by which the assured was misled or her position affected. It is suggested that the company in acknowledging the receipt of the proofs made no objection that they were received too late, and retained them in its possession. It is submitted that they were under no obligation so to inform the assured or to return the proofs. It does not appear that failure to do either of these things either did or could mislead the assured or affect her rights as matter of law.

Massachusetts was the *locus contractus*, and the law of Massachusetts should govern the construction of the the contract if different principles prevailed in different jurisdictions; but the law herein applicable, as administered by this court and by the courts of Massachusetts and New York, is the same, and, it is submitted, supports the position of the plaintiff in error. *Lohnes* v. *Ins. Co.,* 121 Mass. 439; *Shawmut Sugar Refining Co.* v. *Ins. Co.,* 12 Gray, 439; *Markey* v. *Ins. Co.,* 103 Mass. 78, 93; *Ins. Co.* v. *Wolff,* 95 U. S. 326; *New York*

*Life Ins. Co.* v. *Fletcher*, 117 U. S. 519; *Bush* v. *Ins. Co.*, 63 N. Y. 531; *Van Allen* v. *Ins. Co.*, 64 N. Y. 469; *Walsh* v. *Ins. Co.*, 73 N. Y. 5; *Marvin* v. *Ins. Co.*, 85 N. Y. 278; *Cole* v. *Ins. Co.*, 99 N. Y. 36.

*Mr. William Nathaniel Cogswell* for defendant in error. *Mr. William F. Cogswell* was with him on the brief.

Mr. JUSTICE MILLER, after stating the case as above reported, delivered the opinion of the court.

Without deciding whether this notice to Phillips, of the death of Edwards, would have been a sufficient compliance with the contract requiring a written notice of the death to be given to the company at Hartford, if it had been attempted to comply with the condition in that manner, and without deciding whether, if the proofs of death had been made out and delivered to Phillips, with no more in the case than that, it would have been a sufficient compliance with that provision, we are of opinion that the whole course of dealing by the company with Phillips and with the plaintiff below establish the proposition that the company recognized Phillips as its agent for these purposes, and so acted upon his information of the death of Edwards as to accept that as sufficient notice, and to constitute him their agent for the purpose of receiving the proofs of death. Phillips went to the office of the company in Hartford; he there gave the information of the death of Edwards to the company, with such particulars as were then known in regard to the incidents of his death. The acting officer of the company, the man who in his own testimony describes himself as having charge of claims for losses by death, then furnished him with the requisite blanks for the further proof required by formal affidavits of the parties. This officer knew that Phillips was treated by the insured as the agent of the company for giving this notice, he accepted that notice, he acted upon it, and he intrusted Phillips, who was an agent of the company, and had been so for ten years or more, with the forms of affidavits necessary

to show what the company required to be proved in order to justify them in paying the money upon the policy. Phillips undertook this business, delivered these blank affidavits, and stated to the plaintiff's agent that they were to be returned to him when completed. They were so returned to him, but, without sending them to the company, after keeping them a long time in his possession, he again gave them to the plaintiff's agent, with the declaration that they were imperfect, and suggested further proofs.

Soon after this they were returned to him, though it is not stated whether any further proofs were made out or not, and he then forwarded them to the company. He evidently considered himself as the agent of the company when he required additional proofs. As confirmatory of this, the evidence shows that the company received the proofs without objection, and when sometime afterwards a brother of the plaintiff made an inquiry of the company in regard to them, they acknowledged that they had received them on the 10th day of February, but made no objection that it was too late. They also acknowledged the receipt of "papers in the case of Frank Edwards," in the following letter, dated February 9, 1883:

"E. M. Phillips, Esq., Ag't, Southbridge, Mass.

"Dear Sir: Your letter of the 7th inst., with papers in the case of Frank Edwards, at hand. We understand a chemical analysis of his stomach was made. We should like a full report of the analysis certified to by the chemist who made it.

"Yours truly,       RODNEY DENNIS, Sec'y."

In this there was no hint that the papers were received too late, or that no sufficient notice had been given, but simply the expression of a desire for further information with regard to the actual facts of the case, which would have been useless if the company intended to rely upon the failure to give this notice in time.

Afterwards, on March 10, 1883, S. K. Edwards, "for Katy L. Edwards," the plaintiff below, wrote to the company asking for the date of proof of death of Mr. Frank Edwards and

when it was received at the office. To this the, following reply was made:

"The Travellers' Insurance Co., Claim Department,
                    "Hartford, Ct., March 13, 1883.
"S. K. Edwards, Southbridge, Mass.

"Dear Sir: In reply to yours of 10th inst., would say that we received a letter from agent Phillips, dated February 7, 1883, wherein he writes: 'I found the inclosed upon my table on my return home, and forward the same.' The inclosed were incomplete proof papers relating to the death of Mr. Frank Edwards, and we acknowledged the receipt of same Feb'y 9th, asking for a full report of the analysis of Edwards' stomach, the report to be certified by the chemist who made the analysis. We have no further intelligence respecting the matter.

              "Yours truly,         RODNEY DENNIS, Sec'y."

On March 20, S. K. Edwards, on behalf of his sister, again wrote to the company making inquiry if February 9 was the first time they had the proofs of the death of Frank Edwards, to which the following reply was made:

                                "March 21st, 1883.
"S. K. Edwards, Esq., Southbridge, Mass.

"Dear Sir: Your letter of the 20th inst. is at hand. We received the incomplete proofs of death, to which we alluded in our letter of 13th inst., on the 10th of February for the first and only time. We have only received them once.

              "Yours truly,         RODNEY DENNIS, Sec'y."

During all the correspondence which passed upon this subject, Mr. Dennis, the officer of the company, nowhere intimates that these proofs came too late, or that they were rejected by the company, but the only complaint made was, that he had not received the chemical analysis of the contents of the stomach.

Under all the circumstances of this case, we are of opinion that the company treated Phillips as their agent for the pur-

pose of the early notice of the death of Edwards, and also the receipt of the final proofs thereof, and that it is too late for them now to undertake to defeat this action upon the ground that he was not their agent for any of these purposes.

We do not deem it necessary to go into a critical examination of the authorities upon the questions so often raised of the powers of agents of this class. We simply hold that, whether upon the face of the policy, and the receipt with its indorsements, taken alone, Phillips can be held to have been the agent of the company to whom the notices in question could be properly delivered or not, that the action of the company upon Phillips' communications to its secretary at Hartford of the information of the death of Edwards, and its delivery to him of the blank affidavits and forms which it required to be filled up, together with the subsequent correspondence, show conclusively that the company considered Phillips as its agent throughout the transaction with regard to these notices, and it is, therefore, bound by what he did.

*The judgment of the Circuit Court is affirmed.*