(No. 20287.—)

CHARLES FRAY, Appellee, *vs.* THE NATIONAL FIRE INSUR-
ANCE COMPANY OF HARTFORD, Appellant.

*Opinion filed October 25, 1930—Rehearing denied Dec. 10, 1930.*

CARL S. REED, and HICKS & FOLONIE, for appellant.

HERRICK & HERRICK, for appellee.

Mr. JUSTICE STONE delivered the opinion of the court:

This cause is here on appeal on a certificate of importance of the Appellate Court for the Third District. Appellant seeks to reverse a judgment of that court affirming the finding of the circuit court of Piatt county, though the judgment, by reason of objection to form, was reversed with directions to enter a proper judgment in favor of appellee in the sum of $1500 and costs.

This is an action on a fire insurance policy for loss occasioned by the destruction by fire of a store building and furniture and fixtures located in Mansfield, Illinois. The declaration originally contained three counts, but the first was withdrawn from the jury. The second alleges, in substance, that on May 11, 1927, for a premium paid by appellee, appellant executed and delivered the policy of insurance set out *in hæc verba* in the declaration and to expire May 12, 1928. It contained the usual provisions included for the benefit of the insurer, among which were those providing for the defeat of liability in case the interest of the insured in the property is not truly stated, or in case of incumbrance of the property by a mortgage, or a change of possession or interest except by death, and that the policy should be void "if the interest of the insured therein be other than unconditional and sole ownership" of the property insured. The policy also provided that notice of loss should be given the insurer within six days from the day of the loss and a sworn statement proving the loss within sixty days from the date of the fire, which statement should contain the information therein required as to the time and cause of the fire, etc. This count also alleged that within sixty days after the fire appellant waived such verified statement. The building and its contents were destroyed by fire October 3, 1927. The third count also charges waiver of the provision for proof of loss within sixty days.

Appellant filed a general and special demurrer, which was overruled. It then filed the general issue and three special pleas. The second plea set forth the provisions of the policy concerning the misrepresentation of any material fact or circumstance concerning the property or the interest of the insured therein, and that the policy should also be void if the interest of the insured in the property be other than unconditional and sole ownership. This plea also alleged that prior to the issuance of the policy the property was owned by one William Kersten and Cecil Kersten, his wife; that Kersten and his wife conveyed the property to appellee under a trust agreement, by which appellee held the title to both the real and personal property in trust for payment of certain creditors of Kersten, the plea setting out the names of the creditors and the amount due each; that in the said trust agreement appellee agreed to keep the premises insured, and under it was to sell and dispose of the property according to his best judgment and apply the proceeds to Kersten's debts; that by means of such conveyance and trust agreement appellee was not, at the time of making or delivering the policy, nor thereafter, prior to the happening of the fire, the unconditional and sole owner of the property or any part thereof. The third plea is like the second, and avers, in addition, that the interest of appellee in the property was not truly stated but was misrepresented. Similar allegations were included in the fourth plea, which added that appellee had concealed from appellant his want of interest in the property and had not stated the same.

Appellee filed a general demurrer to the special pleas, which was sustained, and appellant elected to abide its pleas. Evidence was heard before the court and a jury on the second and third counts of the declaration and the plea thereto of the general issue. As to the execution of the policy, its provisions and as to the loss by fire, there is no dispute in the evidence. Nor is the value of the property or the amount of the loss disputed. Appellee's evidence as to his

interest in the property consists of a warranty deed from one A. G. Vaughan and wife and Curtis C. Curl and wife to William C. and Cecil Kersten conveying the real estate on which the building insured was situated and a conveyance of that property by a quit-claim deed from the Kerstens to appellee. The evidence also shows a bill of sale from Kersten to appellee of the furniture, fixtures and other property contained in the building. Appellant offered in evidence the trust agreement made at the time of the deeds referred to and described in the special pleas. On objection of appellee its admission in evidence was refused. Appellant then offered to prove that the only title or interest of appellee under the quit-claim deed and bill of sale in evidence was that of trustee under the trust agreement offered in evidence by appellant. This offer was refused.

It appears from the evidence that the policy was issued by agents of appellant who are known in the record as Vaughan & Curl and whose place of business is located at Mansfield. Curl was present at the fire. Between eight and nine o'clock the next morning appellee came to Curl's office and talked with him about the fire. Curl made out a form of notice which he mailed to appellant and told appellee there was nothing more for him to do until the company sent a form for proof of loss or sent an adjuster. Ten days later one J. L. Foster, representing appellant as adjuster, went to Mansfield, viewed the scene of the fire and questioned Curl and appellee at the former's office. It appears that in the loss notice made out by Curl, appellee, the insured, was designated a trustee. Foster inquired of appellee concerning that relation and appellee produced the trust agreement. Appellee and Curl testified that Foster then told appellee that he did not want to assume the responsibility but would have to report the matter to the company with reference to how the draft should be drawn in payment of the loss, and also that the fire would have to be investigated by the fire marshal and when he received

a report from the latter he would come back and adjust the loss; that it would take about two weeks. These witnesses testified that he also said he would come back and settle the loss. The evidence shows no blank forms for making out a verified statement of loss were ever sent to appellee. Appellee's testimony also shows that during the sixty days following the fire he had several conversations with appellant's agents in Mansfield in which they told him they had heard nothing from the company or the fire marshal. In this he is corroborated by Curl. It also appears that on November 1 Curl called Foster on the telephone and was told by him that he had not received any advice from the company in connection with the matter, which information Curl conveyed to appellee. On the same day Curl called the superintendent of the loss department of appellant at Chicago, and thereafter told appellee that appellant would take care of the loss just as soon as they got the fire marshal's report. Foster, testifying for appellant, stated that he had no recollection of the conversations of November 1 testified to by Curl and appellee, and denied that he told either of them that the fire would have to be investigated by the fire marshal or that he would come back and adjust the loss in about two weeks. He admitted his visit to Mansfield and that he questioned appellee but testified that he did not remember the conversations.

Over objection of appellant the court also admitted testimony of conversations between appellee and Curl or Vaughan after the expiration of sixty days from the date of the fire. The subject of these conversations was that appellee on a number of occasions asked concerning his claim, and was invariably told by Vaughan or Curl that they had heard nothing from the company and that the fire marshal had found nothing. Curl stated that he thought there would be "something doing right away." This testimony also showed that on April 24, 1928, Curl went to Chicago and had a conversation with a special agent and

superintendent of the loss department of appellant, and that he thereafter told appellee that it looked like the company was going to beat him out of it. The basis of the objection to this testimony was that the policy provided that proof of loss should be made within sixty days after the fire. The declaration alleged that appellant within such sixty days waived proof of loss, and that therefore evidence of conversations or matters occurring more than sixty days after the fire was incompetent and prejudicial under the averments of the declaration. These objections were overruled.

At the close of appellee's evidence, and again at the close of all the evidence, appellant moved for an instructed verdict. These motions were denied. The jury returned a verdict for $1500 and judgment was entered thereon. As we have seen, the Appellate Court found the judgment correct except as to form and reversed it for that reason and remanded the cause to the circuit court to enter a proper judgment for $1500 against appellant.

The claimed errors are, that the special pleas, as well as the evidence offered on the trial and excluded, alleged and showed that appellee did not have the unconditional and sole ownership of the property essential to the validity of the policy, and demurrers filed thereto should have been overruled; that the evidence did not show waiver of proof of loss, as required by the policy, and that the court improperly instructed the jury.

Concerning the point on the ownership of the property, appellant urges that as appellee held the title to the property in trust for the creditors of William Kersten he was not the unconditional owner of the property and did not have an insurable interest therein, and the policy was by its terms therefore void. On this point there arises the question whether a trustee who has no personal interest in the subject matter of the trust but who holds the same for the benefit of other persons may in his own name insure the

property and receive the proceeds in case of loss. That question has not previously been squarely presented to this court. In *Security Ins. Co.* v. *Kuhn,* 207 Ill. 166, the insured in the fire insurance policy was the life tenant of the property insured and was likewise a trustee under the will by which she took the life tenancy. In that case the insurer defended on the ground that the interest of the insured being only that of a life tenant and being then seventy years of age, she was entitled to but a small share of the whole value. It was there held that as the remainders were contingent and she was not only the life tenant but the trustee, the entire legal estate, so far as that action was concerned, was vested in her and she was entitled to the entire proceeds of the policy, for the reason that in an action at law she must be regarded as the sole and unconditional owner in fee simple although the property in her hands was, or the proceeds of the insurance were, impressed with a trust which a court of equity would compel her to execute. In *Budelman* v. *American Ins. Co.* 297 Ill. 222, the question was whether, under an executory contract for the sale of land, by provisions of which a deed was to be delivered when the contract was performed by the vendee, the vendor had an insurable interest in the buildings on the real estate described. It was there held that such a contract does not convey the title to the vendee and he does not have an equitable title until he performs the acts necessary to entitle him to a deed; that the vendor's interest was a legal interest, which was insurable, and that he had a right to sue on the policy and collect the proceeds of it although such proceeds were impressed with a trust. In *National Fire Ins. Co.* v. *Lumber Co.* 217 Ill. 115, it was held that ownership of property is sole and unconditional, within the meaning of a fire insurance policy, even though the owner has made a contract for the sale of the land, which at the time of the loss had not been performed. In the above cases the same condition as to ownership of the property appeared.

Appellant bases its contention of want of insurable interest on the part of appellee in the property involved on two grounds, the first of which is that the original transactions between Kersten and appellee, being a quit-claim deed, bill of sale and a declaration of trust, were, in effect, a mortgage, and for that reason appellee was not, under the terms of the policy, an unconditional and sole owner of the property involved. The conveyances were absolute on their face. There is no evidence, either oral or in the terms of the trust agreement offered in evidence by appellant, that appellee, who was cashier of the State Bank of Mansfield, was a creditor of Kersten, but the fact, as shown by the trust agreement set out in the special pleas and admitted by the demurrer to be correct, is that he was not. There was therefore no debt existing between Kersten and appellee. There was no defeasance clause in either the deed, bill of sale or the instrument of trust as offered in evidence. By the latter appellee was given absolute power and direction to sell the property involved and to apply the same on the debts of Kersten. In no event was it possible for Kersten to recover the property. The title of a trustee is commensurate with the powers given and the duties imposed upon him. Appellee, therefore, was not invested with a mere power over the fee but took the fee simple title by the deed. (*Security Ins. Co.* v. *Kuhn, supra; Lawrence* v. *Lawrence,* 181 Ill. 248; *Green* v. *Grant,* 143 id. 61; *Kirkland* v. *Cox,* 94 id. 400.) The transaction does not fall within that class of dealings where a deed absolute on its face is to be deemed a mortgage.

The second ground of claim of want of insurable interest is, that as the only interest of appellee was that of trustee, and he having no other interest whatever in the property, either as debtor or otherwise, was not entitled to insure the same in his name. The rule generally adopted in this country is, that a trustee, though he have no personal interest in the property involved, may procure insurance

on it. From early times in England it has been held that an agent, trustee or consignee could insure, and it was not necessary that the insured should have a beneficial interest in the property. (*Lucena* v. *Craufurd*, 3 Bos. & P. 75; *Howard Fire Ins. Co.* v. *Chase*, 72 U. S. (5 Wall.) 509; *Swift* v. *Mutual Ins. Co.* 18 Vt. 313; 2 Greenleaf on Evidence, 379; Lewin on Trusts and Trustees, 383; *Page* v. *Western Ins. Co.* 19 La. 49.) The rule generally adopted in this country is, that anyone having any legal interest in property can insure it as his own and in his own name without specifying the nature of his interest, and whatever relation exists between him and his *cestui que trust,* if such there be, is a matter with which the insurer is not concerned. (*Col. Ins. Co.* v. *Lawrence,* 10 Pet. 516; *Howard Fire Ins. Co.* v. *Chase, supra; King* v. *State Mutual Ins. Co.* 7 Cush. 7.) In this case the declaration of trust required that appellee insure the property. Such was not for the benefit of Kersten but for the *cestui que trustent,* who were his creditors. Where a policy is issued to the holder of the legal title without inquiry by the insurer as to whether any other person is interested in such property and no representations are made by the insured further than that he is the owner of the property, it is no defense to an action on the policy that the insured is a mere trustee for an undisclosed beneficiary. *Rochester Loan Co.* v. *Liberty Ins. Co.* 44 Neb. 537, 62 N. W. 887; 14 R. C. L. sec. 231, p. 1055.

We are of the opinion that the unconditional and sole ownership of the property, so far as the legal title is concerned, was in appellee and he had an insurable interest in the property. The demurrer to the special pleas was properly sustained.

The second ground urged for reversal concerns the question of waiver. The declaration alleges that within sixty days following the fire appellant waived the provisions of the policy concerning proof of loss, which required that within sixty days a signed and verified statement should be

made by the insured.  It was incumbent, therefore, on appellee to show such waiver within such sixty days.  We have referred to the evidence concerning such waiver.  The only contradiction as to any of it is the testimony of the adjuster, Foster, who states that he does not remember the conversations testified to by the witnesses Curl and appellee, and denies that he stated that the loss would have to be investigated by the fire marshal and that he would come back in about two weeks and adjust the loss.  Appellant does not contend that Vaughan, Curl and Foster were not its agents, nor is it contended that appellant would not be bound by the acts and statements of such agents if they tended to lull appellee into believing the company would not require formal proofs of loss.  It is admitted that such acts amount to a waiver.  Appellant contends, however, that there is no evidence of such waiver of the required proof of loss.  Since the Appellate Court decided the issues of fact the same are not open to review here except to determine whether there is any evidence which, given its fair intendment, supports the verdict reached.  The rule is settled that an insurance company may, through its agent, waive proof of loss without the use of express words.  This may be done by his acts and conduct inconsistent with an intention to enforce the strict compliance with the conditions of the policy, which conduct is calculated to lead the insured to believe that the company did not intend to require such compliance.  (*Citizens' Ins. Co.* v. *Stoddard,* 197 Ill. 330; *Milwaukee Mechanics' Ins. Co.* v. *Schallman,* 188 id. 213; *Dwelling House Ins. Co.* v. *Dowdall,* 159 id. 179.)  The question was one for the jury, and there was ample evidence to justify the trial court in overruling appellant's motion, at the close of the evidence, for an instructed verdict.

The trial court, over the objections of appellant, admitted evidence of conversations between appellee and Curl which occurred after the expiration of the sixty-day period, during which, as alleged in the declaration, the waiver took

place. This evidence was that Curl told appellee that the fire marshal had reported, and that he, Curl, thought there would be "something doing now right away;" that it looked like there would be an adjustment soon; that the fire marshal did not find anything that looked like the fire was set, and that after visiting the office of appellant in Chicago in April, 1928, Curl stated to appellee that it looked as though the company was trying to beat appellee out of the money. This testimony was not competent to establish a waiver within the sixty-day period, as it obviously could not have such a tendency. We are of the opinion, however, that the undisputed evidence so clearly establishes a waiver within the sixty-day period, that were a jury, without the incompetent evidence, to return any other verdict such verdict would not stand. It is not disputed that the agent of appellant told appellee to wait until appellant sent forms for such proofs of loss; that no such forms or blanks were ever sent to appellee, and that in repeated conversations during the sixty-day period Curl reported to appellee that he had heard nothing from appellant other than the telephone conversation with Heald, in which the latter said they "would take care of it as soon as they got the fire marshal's report." This telephone conversation is not denied. Foster did not deny the conversations concerning which appellee and Curl testified, further than hereinbefore indicated. In this condition of the record we would not be justified in returning this case for another trial merely on account of the receipt of evidence which, while but cumulative of the other evidence in the record concerning waiver, was incompetent.

Appellant's third point is that appellee's instructions 4 and 5 were erroneous, as neither of them limited the waiver to sixty days after the time of the fire. Instruction No. 4 told the jury that if they believe from the evidence that the agent of the insurance company told plaintiff, in substance, that as soon as the fire marshal reported on the loss the company would adjust the claim, such would constitute a

waiver of the making and delivery of the formal proofs of loss, and in that event plaintiff would not be required to furnish such formal proofs. The fifth instruction told the jury that while the policy required the plaintiff to furnish formal proofs, if the defendant through its agents induced the plaintiff to believe that such insurance would be adjusted and paid without formal proofs of loss the plaintiff was not required to furnish such proofs. These instructions, while they do not specifically limit the waiver to the sixty-day period, yet they clearly refer to evidence of such waiver occurring prior to the sixty-day period, and for reasons governing our opinion on the objection to evidence we would not be justified in returning this case for a new trial.

The judgment of the Appellate Court is therefore affirmed.

*Judgment affirmed.*