VAN DYNE ET AL., APPELLANTS, *v.* FIDELITY-PHENIX INS. CO., APPELLEE.

(No. 1059—Decided February 5, 1969.)

*Mr. Albert C. Joseph* and *Mr. Harold B. Thomas,* for appellants.

*Mr. David H. Dankworth* and *Mr. Ted S. Cooper,* for appellee.

BROWN, J. This is an appeal on questions of law only by the plaintiff-appellant Irene Van Dyne from a final judgment of the Common Pleas Court of Belmont County on a directed verdict requested by defendant, appellee

herein, Fidelity-Phenix Insurance Company, wherein the trial court directed the jury to render a verdict in the sum of $1,160 for a fire loss and damage of personal property under a homeowners insurance policy which provided fire insurance protection.

The plaintiff in her petition had sought judgment for $6,000 fire loss to personal property by reason of the insurance policy specifying coverage of unscheduled personal property with a limit of liability in the sum of $6,000. The loss to personal property exceeded $6,000. The insurance policy issued to the plaintiff and her husband, Raymond Van Dyne, had a policy term of three years, from February 20, 1964, to February 20, 1967, for a total three-year premium of $181, and the plaintiff paid the premium in three annual installments of $60.33 each. The fire loss occurred January 30, 1965.

The defendant contended that the plaintiff was not entitled to recover judgment for $6,000 personal property fire loss because at the time of the fire loss on January 30, 1965, the personal property was not at the insured's address stated in the policy declaration, namely, 508 Columbus Avenue, Martins Ferry, Ohio, but was located at a partially completed new house at Montclair Addition, St. Clairsville, Ohio, beside which the plaintiff was residing in a house trailer, and there had been no endorsement in writing made a part of the policy showing transfer of coverage of the personal property to the new property at Montclair Addition, St. Clairsville, and that the defendant's agent could not waive any provision in the policy which required such a change to be endorsed in writing on the policy. The defendant further contended that the plaintiff as a matter of law was entitled to a recovery of $1,000 plus interest of $160 as provided in a policy provision for coverage of unscheduled personal property elsewhere than on the premises. Plaintiff, however, contended and testified that her husband had requested of the defendant's insurance agency, Fiscus & Son Agency, that the insurance coverage be transferred from the Columbus Avenue, Martins Ferry, house to the Montclair Addition, St. Clairsville, address.

Basically, the trial court accepted defendant's contention concerning the law applicable to the facts and granted defendant's motion to direct a verdict in favor of the plaintiff for $1,160, representing the coverage limited to fire loss of unscheduled personal property away from the premises insured. In discussing the reasons for granting the motion for a directed verdict the trial judge stated that, to present an issue for the jury, the evidence must show that a request was made to transfer the insurance to the Montclair Addition, St. Clairsville, house and that the defendant agreed to waive the provisions of the policy that this transfer be endorsed in writing on the policy, and concluded that there was not enough evidence to take the case to the jury on the question whether there was an agreement on behalf of the defendant company to change the insurance from the Martins Ferry address to the St. Clairsville address, and based the reasoning and conclusion for granting this motion for a directed verdict on the case of *T. F. Walsh & Co.* v. *Queen Ins. Co.,* 6 C. C. (N. S.) 1, 27 C. C. 313, and 30 Ohio Jurisprudence 2d 471, Section 528.

To properly understand the legal issues involved, and to measure and determine the correctness of the trial court's directed verdict requested by the defendant, as previously explained, the following pertinent provisions of the Homeowners Policy issued by the defendant, Fidelity-Phenix Insurance Company, to the plaintiff should be set forth verbatim.

"HOMEOWNERS POLICY

"FIDELITY-PHENIX INSURANCE COMPANY

"DECLARATIONS

"Named Insured and P. O. Address:

"Raymond VanDyne and Irene VanDyne     Policy Term: 3 Years
508 Columbus Avenue (rear)     Inception: 2-20-64
Martins Ferry, Belmont Co., Ohio     Expiration: 2-20-67

"The described premises covered hereunder are located at the above address, unless otherwise stated herein: (No., Street, Town, County, State)

"Insurance is provided only with respect to those of the following coverages which are indicated by a specific limit of liability applicable thereto.

| Coverages | Limit of Liability | Premium | |
|---|---|---|---|
| "S A. Dwelling | $15,000.00 | Basic Policy | $150.00 |
| E B. Appurtenant Private | | Premium | |
| C Structures | $ 1,500.00 | Additional | |
| C. Unscheduled Personal | | Premium | $ 22.00 |
| 1 Property | $ 6,000.00 | Total Policy | |
| | | Premium | $172.00 |
| D. Additional Living | | Credit, if any, | |
| Expense | $ 3,000.00 | for existing | |
| | | insurance | $ ---. |
| | | Net Prepaid | |
| | | Premium | $172.00 |

" ...................................................................................................................

"In Consideration of the Provisions and Stipulations Herein or Added Hereto and of the Premium Above Specified * * * at location of property involved, to an amount not exceeding the amount(s) above specified, does insure the Insured named in the declarations above and legal representatives, to the extent of the actual cash value of the property at the time of loss, * * * to the property described herein while located or contained as described in this policy, or pro rata for five days at each proper place to which any of the property shall necessarily be removed for preservation from the perils insured against in this policy, but not elsewhere.

"Assignments of this policy shall not be valid except with the written consent of this Company.

"* * *.

"Waiver Provisions. No permission affecting this insurance shall exist, or waiver of any provision be valid, unless granted herein or expressed in writing added hereto. No provision, stipulation or forfeiture shall be held to be waived by any requirement or proceeding on the part of this Company relating to appraisal or to any examination provided for herein.

"* * *.

"GENERAL CONDITIONS

"2. DEFINITIONS:

"* * *.

"(b) Premises: Means the premises described in the Declarations, including grounds, garages, stables and other outbuildings incidental thereto, and private approaches thereto.

"* * *.

"3. OTHER INSURANCE: Other insurance covering the described dwelling building (except existing insurance for which credit is given in this policy) is not permitted.

"* * *.

"CONDITIONS APPLICABLE ONLY TO SECTION 1

"1. PERMISSION GRANTED: (a) for such use of the premises as is usual or incidental to a dwelling; (b) for the premises to be vacant

or unoccupied without limit of time, except as otherwise provided in this policy for certain specified perils; however, a building in the course of construction shall not be deemed vacant; and (c) for Named Insured to make alterations, additions and repairs, and to complete structures in course of construction.

"* * *.

"HOMEOWNERS POLICY—BROAD FORM
"PROVISIONS APPLICABLE TO SECTION 1
"DESCRIPTION OF PROPERTY AND INTERESTS COVERED
"COVERAGE C—UNSCHEDULED PERSONAL PROPERTY.

1. On premises: This policy covers unscheduled personal property usual or incidental to the occupancy of the premises as a dwelling, owned, worn or used by an Insured, while on the premises, or at the option of the Named Insured, owned by others while on the portion of the premises occupied exclusively by the Insured.

"* * *.

"2. Away from premises: This policy also covers unscheduled personal property as described and limited, while elsewhere than on the premises, anywhere in the world, owned, worn or used by an Insured, or at the option of the Named Insured, owned by a guest while in a temporary residence of, and occupied by an Insured or owned by a residence employee while actually engaged in the service of an Insured and while such property is in the physical custody of such residence employee or in a residence temporarily occupied by an Insured. Property pertaining to a business is not covered.

"The limits of this Company's liability for such property while away from premises shall be an additional amount of insurance equal to 10% of the amount specified for Coverage C, but in no event less than $1,000.

"* * *."

Considerable testimony was adduced by the defendant to support a contention that the foregoing insurance policy, being a homeowners policy, could not be transferred to cover the personal property at the partially constructed house at Montclair Addition, St. Clairsville, because it was not owner-occupied, and, in fact, was not occupied at all. There is no merit in this contention, and it is a flat contradiction of the express provisions of the policy.

Moreover, Richard Fiscus, agent for the defendant, without reservation, testified that if he had been requested by the plaintiff, he could have transferred by endorsment the insurance coverage for the unscheduled personal property from the Columbus Avenue, Martins Ferry, ad-

dress, to the Montclair Addition, St. Clairsville, address, to which the plaintiff had moved.

In the policy conditions, applicable only to Section 1 coverages, paragraph 1 (b) thereof, as set forth above, permission is granted to provide Section 1 coverages, which include unscheduled personal property coverage for premises vacant or unoccupied without limit of time. Additionally, a building in the course of construction is expressly defined as not vacant and, hence, is the same as an occupied house for purposes of permissible coverage. These policy provisions harmonize with the admissions of Richard Fiscus, discussed above, that he could have made this personal property coverage transfer if he had been requested to do so by the plaintiff.

We must next inquire whether as a matter of law the defendant's agent could change the location of the unscheduled personal property insured without endorsing in writing this change on the policy so as to bind the defendant company.

It is true that the case of _T. F. Walsh & Co._ v. _Queen Ins. Co._ (1905, Circuit Court, Cuyahoga County), 6 C. C. (N. S.) 1, 17 C. D. 313, was relied upon by the defendant in urging, and by the trial court in reaching a decision, that personal property was not on the premises described in the policy, and that the insured could be paid only on the basis of the destroyed property being personal property away from the premises as described under Coverage C. That decision, and the text, 30 Ohio Jurisprudence 2d 471, Section 528, based upon it, stands for the general rule that where goods insured "while located and contained as described herein, and not otherwise," under a standard form policy, are removed to another location without the written consent of the company to such removal endorsed upon the policy, there can be no recovery under the policy for loss by fire sustained after such removal, notwithstanding the insured notified the agent of the company of the proposed removal and the agent said he would attend to the matter and see that the proper entries or endorsement were made on the policy so

that the insurance would be preserved. cf. *Ohio Farmers'
Ins Co.* v. *Burget*, 65 Ohio St. 119, distinguishable. In
*Walsh, supra,* the insurance policy had a nonwaiver pro-
vision prohibiting any waiver of any provision of the poli-
cy unless granted therein or expressed in writing added
thereto, similar to the nonwaiver provision in the *Van
Dyne case* at bar.

Plaintiff contends that the Ohio Supreme Court in the
case of *Ohio Farmers Ins. Co.* v. *Cochran* (1922), 104 Ohio
St. 427, paragraphs three and four of the syllabus, over-
ruled *Walsh, supra,* and that the *Cochran case* establish-
ed the principle that a written nonwaiver policy provision
of an insurance policy may be waived by subsequent agree-
ment, written or oral, or by acts or conduct of the insurer's
duly authorized officers and agents. Although the Ohio
Supreme Court, in *Cochran, supra,* did use language in-
dicating such a proposition, a careful reading of the opin-
ion reveals that *Cochran, supra,* belongs to that category
of cases where nonwaiver provisions do not apply to waiv-
er of acts required after a loss has occurred or after lia-
bility has attached by reason of the occurrence of an event
within the protection of the policy, such as furnishing
proof of loss, sending immediate notice of an accident,
transmitting notice of suit, and the giving of other notices.
*Hartford Accident & Indemnity Co.* v. *Randall*, 125 Ohio
St. 581; *Lind* v. *State Automobile Mutual Ins. Assn.*, 128
Ohio St. 1; 30 Ohio Jurisprudence 2d 702, Insurance, Sec-
tion 764, Waiver of Policy Requirements As To Acts
After Loss. Thus, the *Cochran case, supra,* is distinguish-
able from the *Van Dyne case* at bar, but, nevertheless, the
*Cochran case* does point the way in which the Ohio Sup-
reme Court was going.

An insurance company cannot, by a nonwaiver pro-
vision in its policy, disable itself from subsequently modi-
fying its own contract, or prevent its future conduct from
having the force and effect which the law says it shall have.
Attempts of parties, including insurers, to tie up by con-
tract their freedom of dealing with each other are futile,
and such a nonwaiver provision does not prohibit or limit

the company issuing the policy, or its duly authorized agent, from subsequently entering into a valid oral agreement with its insured, modifying the policy's terms. *Coletta* v. *Ohio Casualty Ins. Co.* (Court of Appeals, Summit County, 1953), 96 Ohio App. 70 (see paragraphs two and three of the syllabus, and pages 77, 79, 80, 81 in the opinion); *Union Mutual Life Ins. Co.* v. *McMillen,* 24 Ohio St. 67; 30 Ohio Jurisprudence 2d 703, 704, Sections 765, 766. In the *Coletta case,* in the excellent opinion written by Doyle, J., he succinctly summarizes the gist of the problems concerning the nonwaiver provision, and its logical resolution, at page 80, as follows:

"It follows, we think, that empirical or inductive logic requires the conclusion that, if a principal individually cannot disable himself from subsequently contracting orally to modify a written instrument, he cannot disable himself from contracting or binding himself through an authorized agent. Furthermore, if a general agent is vested with authority to conclude contracts, and to 'sign, issue and deliver policies of insurance' (see admission in pleadings noted *supra*), such agent is vested with authority to elect the procedure in the making of the contract. If, as in the instant case, the election is made to not attach a rider or written memorandum to the contract, but to treat the old contract, in conjunction with an oral agreement, as full coverage under the policy, it would seem that such election comes directly within the powers conferred upon a general agent."

The above rules and reasoning in the *Coletta case, supra,* are applicable to the *Van Dyne case* at bar. In the present *Van Dyne case* Richard Fiscus admitted that the Fiscus & Son Agency was a general agent of the defendant company with authority to write, issue and deliver policies of insurance to the insured, including authority to make changes in the policy by adding riders and endorsements to the original policy without getting prior approval from Fidelity-Phenix Insurance Company. Therefore, as in *Coletta, supra,* Fiscus & Son Agency had a right to waive or change a provision of the insurance policy, and it could be accomplished orally by the general agent on behalf of the

insurer without written endorsement on the policy. *Ohio Farmers Ins. Co.* v. *Cochran,* 104 Ohio St. 427. Cf. *Miller* v. *Wick Bldg. Co.,* 154 Ohio St. 93 (paragraph two of the syllabus and page 98 in the opinion), and *First National Bank of New Bremen* v. *Burns,* 88 Ohio St. 434, at pages 440, 441, 49 L. R. A. (N. S.) 764.

The foregoing conclusion is particularly true and fortified by reason of the fact that the defendant company collected an insurance premium of $60.33 annually based upon a premium rate which the face of the policy clearly states was for a coverage of unscheduled personal property with a limit of liability of $6,000, and even collected this annual insurance premium twice after the fire loss of January 30, 1965. Defendant's agent testified that the plaintiff was entitled to a premium refund of one-half if this personal property in the Columbus Avenue house was not covered after plaintiff's move. To permit the defendant company as a matter of law to pay only one-sixth of this coverage now because of an issuable, arguable fact, on which reasonable minds can differ, concerning an oral agreement by the defendant company through its Fiscus & Son Agency that it would attach an endorsement showing the change of location of the unscheduled personal property, would be unjust and inequitable.

The respective parties produced evidence which was in sharp conflict as to whether plaintiff's husband before the fire loss requested the defendant company's agent to transfer the personal property insurance coverage to the new location at Montclair Addition, St. Clairsville, and whether the general agent, Fiscus & Son Agency, consented or agreed to endorse in writing on the original policy such change in location of the personal property. This was an issue of fact, which should have been submitted to the jury for its determination. For that reason it was error to direct a verdict for the plaintiff in the limited amount of $1,160 as requested by the defendant when there was a jury issue as to whether the plaintiff was entitled to recover the coverage provided for personal property in the sum of $6,000.

Lastly, the rules of waiver and estoppel operate in

this case in favor of the plaintiff requiring submission to the jury of the issues raised by the pleadings and evidence concerning the claim for the specified full coverage of $6,-000 for the unscheduled personal property. Under this theory, it is a general rule that the verbal consent of an authorized insurance agent to the removal of insured property is sufficient to bind the insurance company, where it was intended that the written consent required by the policy would be properly endorsed thereon but the loss occurred before the written endorsement of the insurer had been procured. *Ohio Farmers' Ins. Co.* v. *Burget*, 17 C. C. 619, 9 C. D. 369, affirmed in 65 Ohio St. 119, 55 L. R. A. 825, 87 Am. St. Rep. 596; 38 A. L. R. 636; 4 A. L. R. 2d 868; 30 Ohio Jurisprudence 2d 718, Insurance, Section 783, Location and Removal of Insured Property. This rule should be coupled with the rule that an insurance company cannot so contract so as effectively to prevent all future waivers on its part. *English* v. *National Casualty Co.*, 138 Ohio St. 166; 29A American Jurisprudence 214, Insurance, Section 1044, Rule That Restrictions Are Not Conclusive; 45 Corpus Juris Secundum 622, 630, 667, 671, Insurance, Sections 676, 682, 701 (c)—Estoppel or Waiver by Company, and 704 (A).

As previously discussed the insurer in this case for three years collected premiums on the basis of full coverage of the unscheduled personal property for the sum of $6,000. The following legal principle must, therefore, apply. An insurer cannot assert a violation of a policy provision or a certain interpretation of a policy provision so as to limit its liability for a fire loss occurring after issuance of a fire insurance policy, and at the same time treat and interpret the insurance policy differently so as to insure the personal property at a sum six times greater for the purpose of earning and collecting premiums. *English* v. *National Casualty Co.*, 138 Ohio St. 166, paragraph one of syllabus and page 171 in the opinion, and citing with approval *Ohio Farmers Ins. Co.* v. *Cochran*, 104 Ohio St. 427; 29A American Jurisprudence 250, Section 1083; 45 Corpus Juris Secundum 699, 700, Section 716 b, Retention

of Premiums. Defendant's general agent, Fiscus & Son Agency, was aware before the fire loss that the plaintiff had moved to a mobile home in the Montclair Addition, St. Clairsville, and that this was near the house under construction, where the fire occurred.

The acceptance of insurance premiums by an insurer for insurance coverage of $6,000 for unscheduled personal property on the described premises is inconsistent with an offer of the insurer, or a decision of a trial court based upon such offer, to pay a limited liability fire loss of $1,000 for personal property away from the described premises. It is a well-recognized rule in Ohio that a party cannot be permitted to occupy inconsistent positions or to take a position in regard to a matter which is directly contrary to or inconsistent with one previously assumed by him. *Darke County* v. *Mercer County*, 93 Ohio St. 37; *Hoffman* v. *Fleming*, 66 Ohio St. 143; 20 Ohio Jurisprudence 2d 522, 533, Estoppel and Waiver, Section 55, Acceptance of Benefits, and Section 61, Inconsistent Positions, Generally; 31 Corpus Juris Secundum 559, 609, Estoppel, Section 109, Acceptance of Benefits, and Section 116, Inconsistency in Positions before and after Commencement of Litigation. The insurer should not be permitted to blow hot when it fixes the insurance premium and collects it, and then blow cold when it comes to determining the insured loss for the insured. This principle is part of the mosaic of justice, which requires that there be a recognition of good, and its attainment, and a recognition of evil and its avoidance.

In this case the insurer obtained from the plaintiff Van Dyne an itemized notice of loss, as well as a proof of loss, showing an inventory of personal property destroyed in the fire loss exceeding $6,000. This, likewise, amounts to an estoppel against the insurer to deny its liability under the $6,000 coverage for unscheduled personal property. The insurer knew of this changed location to premises other than that described in the policy when it investigated the fire loss claim and obtained the itemized notice and proof of loss. This itemized notice and proof of loss was requested by the insurer's adjusting agent within several

days after the fire loss, and at that time the insurer did not claim partial liability only on the grounds of changed location of the personal property. The insurer's general agent, Fiscus & Son Agency, knew then all the circumstances concerning the changed location of the personal property.

Where there has been a change in the location of the personal property from the premises as described in the policy, which would limit its liability to $1,000, and the insurer, with a full knowledge of the facts and with out denying liability on that ground, recognizes the validity of the policy, requiring the insured to furnish itemized and detailed notices of loss, which the insured does at some trouble and expense, the insurer is precluded from asserting the change in location of the personal property as a limited defense. 29A American Jurisprudence 264, Section 1100; 45 Corpus Juris Secundum 749, Section 738.

All the applicable legal principles of insurance contracts, and the law of waiver and estoppel, operate against the contentions of defendant, and the decision of the trial court, which limited the liability for the fire loss to the personal property to one-sixth of the stated coverage of $6,000. The actual fire loss admittedly exceeded the stated coverage.

The final judgment of the trial court on the directed verdict requested by the defendant limiting the recovery of plaintiff to $1,160 is reversed at the costs of defendant, and the cause is remanded to the Common Pleas Court for a new trial.

*Judgment reversed.*

LYNCH and O'NEILL, JJ., concur.

BROWN, J., of the Sixth Appellate District, sitting by designation in the Seventh Appellate District.